UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| ILYANA ROSARIO, on behalf of herself and all others similarly situated, | ) CASE NO. 1:21-cv-00391 <br> ) <br> ) JUDGE DONALD C. NUGENT |
| Plaintiff, | ) <br> ) MAGISTRATE JUDGE WILLIAM H. |
| vs. | ) BAUGHMAN, JR. <br> ) |
| SHURTAPE TECHNOLOGIES, LLC, | ) **JOINT MOTION FOR PRELIMINARY** <br> ) **APPROVAL OF CLASS ACTION** |
| Defendant. | ) **SETTLEMENT AGREEMENT** <br> ) |

## I.  INTRODUCTION

Plaintiff Ilyana Rosario ("Representative Plaintiff, "Class Representative," or "Plaintiff"), on behalf of herself and the members of proposed settlement Class ("Class Members"), and Defendant Shurtape Technologies, LLC ("Defendant" or "Shurtape"), respectfully move this Court to preliminarily approve the Class Action Settlement Agreement ("Settlement Agreement" or "Settlement") between Plaintiff and Defendant pursuant to Fed. R. Civ. P. 23(e).

In support of this motion, Representative Plaintiff and Defendant submit the following documents and proposed orders:

  Exhibit 1:  Class Action Settlement Agreement

  Exhibit 2:  Declaration of Class Counsel Chastity L. Christy

  Exhibit 3:  Settlement Agreements and General Releases for Ilyana Rosario, Daniel Anderson, and Anthony LeVau

  Exhibit 4:  Proposed Class Notice

  Exhibit 5:  Proposed Preliminary Order

  Exhibit 6:  Proposed Final Order and Judgment Entry

1

Representative Plaintiff and Defendant request that the Court grant preliminary approval of the Settlement, designate Representative Plaintiff as Class Representative, preliminarily approve Class Representative's request for a Service Award, designate Plaintiffs' counsel as Class Counsel, preliminarily approve Class Counsel's request for attorneys' fees, and direct distribution of notice to the Class by entering the proposed Preliminary Order as Exhibit 5. Following the Fairness Hearing, Representative Plaintiff and Defendant will request that the Court grant final approval of the Settlement by entering the proposed Final Order and Judgment Entry attached to the Settlement Agreement as Exhibit 6.

The following schedule sets forth a proposed sequence for the Settlement:

- Five (5) days after Preliminary Approval: Defendant will provide a Third-Party Settlement Administrator a spreadsheet containing the names, last known addresses, and Social Security Numbers of the Class Members;

- Fourteen (14) days after Preliminary Approval: The Third-Party Settlement Administrator will mail Notice to the Class Members;

- Thirty (30) days after mailing of Class Notice: Last day for Class Members to "opt-out" of the Settlement and submit written objections to the Settlement;

- Forty-Five (45) days after mailing of the Class Notice: The Parties will file with the Court a Joint Motion for Final Approval, which shall also include as an attachment a Declaration from the Third-Party Settlement Administrator verifying that the Class Notice was distributed, the manner in which it was distributed, and the Parties will submit the proposed Estimated Schedule of Individual Payments and an updated version of the proposed Final Order and Judgment Entry;

- Sixty (60) days after mailing of Class Notice **[DATE TO BE SET BY COURT]**: Final Settlement approval hearing at **[TIME TO BE SET BY COURT]**;

- Thirty-One (31) days after the Court's Final Order and Judgment Entry: the Effective Date; and

- Seven (7) days after the Effective Date: The Third-Party Administrator will mail the settlement funds to Representative Plaintiff and the Class Members, the Service Award to Representative Plaintiff, and the attorneys' fees and reimbursement of litigation expenses to Class Counsel.

As explained below, the Settlement Agreement was reached during arms-length negotiations between the Parties, which were conducted by experienced counsel following investigation, and on the basis of mutual recognition of the strengths and weaknesses of each other's positions.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. The Action

On February 18, 2021, Representative Plaintiff Ilyana Rosario filed this Action as a collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, as well as a "class action" pursuant to Fed. R. Civ. P. 23 under the Ohio Minimum Fair Wage Standards Act ("OMFWSA"), O.R.C. § 4111.03. On April 1, 2021, Representative Plaintiff filed her First Amended Complaint alleging the same causes of action, but narrowing the scope of the alleged violations.

The action contests Defendant's practice and policy of failing to include bonuses into the calculation of overtime pay to Representative Plaintiff and its hourly employees.

On April 7, 2021, Defendant filed an answer to the Amended Complaint denying liability to Plaintiff or any Class Members as defined in the Settlement Agreement, and asserting several affirmative defenses.

### B. Negotiation of The Settlement

Between April 2021 and May 2021, the Parties engaged in informal yet comprehensive discovery regarding Plaintiff's claims and Defendant's defenses to such claims. This included a complete analysis of each Class Member's overtime damages.

Between May 2021 and June 2021, the Parties engaged in settlement negotiations, and ultimately reached an agreement on June 9, 2021 to settle the Action on the terms set forth in the attached Settlement Agreement.

### C. The Settlement Terms

The terms of the Settlement Agreement include: the Total Settlement Amount to be paid by Defendant, the Effective Date of the Settlement, the calculation of Individual Payments to eligible recipients, the process for distributing Individual Payments to recipients, the proposed Service Award to Representative Plaintiff in recognition of her service in this Action and the providing of a general release, the proposed separate payments made to Opt-In Plaintiffs who are not part of the defined Class, and the proposed distribution of reasonable attorneys' fees and expense reimbursements to Class Counsel.

The persons eligible for Individual Payments consist of Representative Plaintiff and members of the proposed settlement class. The definition of the Settlement Class encompasses 184 current and former hourly employees of Defendant who received at least one bonus payment and who worked more than forty hours in one or more workweeks, during which they received such payment between February 18, 2018 and April 10, 2021.

The Class Members will release all federal and state wage-and-hour claims, rights, demands, liabilities and causes of action (1) asserted in Plaintiff's Amended Complaint and (2) any other claims regarding the alleged failure to include all remuneration paid to employees in their regular rate of pay for purposes of calculating their overtime compensation, including but not limited to claims for unpaid wages, unpaid overtime compensation, liquidated damages, interest, attorneys' fees, and expenses, pursuant to the Fair Labor Standards Act and the Ohio Minimum Fair Wage Standards Act through the Release Period. The "Released Period" for Plaintiff and the Class shall mean the period between February 18, 2018 and April 10, 2021.

The Individual Payments for which Class Members are eligible have been calculated proportionally on each Class Member's overtime damages resulting from Defendant's failure to

include in the calculation of their regular rates "all remunerations for employment paid to, or on behalf of, the employee," such as the bonuses, during the Calculation Period. The Calculation Period for Representative Plaintiff and the Class shall mean the period between February 18, 2018 and April 10, 2021.

### III. THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED

The proposed class settlement is subject to approval by the Court pursuant to Fed. R. Civ. P. 23(e). As shown below, the Court's preliminary approval is warranted.

#### A. Preliminary Approval of the Settlement Under Rule 23(b) Is Warranted

##### 1. Certification of the Settlement Class Is Appropriate

A proposed settlement class must satisfy the requirements of Rule 23. *UAW v. General Motors Corp.,* 497 F.3d 615, 626 (6th Cir. 2007) (citing *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 620 (1997)). The proposed Class satisfies those requirements.

The proposed class meet Rule 23(a)'s requirements of numerosity, commonality, typicality, and adequacy of representation. *See Senter v. General Motors Corp.*, 532 F.2d 511 (6th Cir.), *cert. denied*, 429 U.S. 870 (1976); *UAW v. General Motors Corp.,* 497 F.3d at 626. The Class, consisting of 184 members, is "so numerous that joinder of all members is impracticable." Common issues of law or fact are presented by the Class's claims under the OMFWSA, including:

> a) Whether Defendant miscalculated the overtime compensation it paid to Plaintiff and other Class Members by excluding the bonuses from the calculation of their "regular rates" for purposes of overtime compensation; and
>
> b) Whether Plaintiff and other Class Members would have received additional overtime compensation if the bonuses had properly been included in their "regular rates" of pay, and, if so, in what amount.

5

Representative Plaintiff is an adequate representative of the Class in that she has common interests with other Class Members and she has vigorously prosecuted the interests of the Class through qualified counsel. *Rutherford v. City of Cleveland*, 137 F.3d 905 (6th Cir. 1998).

The Class further satisfies Rule 23(b)(3)'s requirements of predominance and superiority. *Senter*, 532 F.2d at 522; *UAW v. General Motors Corp.,* 497 F.3d at 626. The unpaid overtime issues presented under the OMFWSA predominate over any individual questions. Class-wide resolution of this controversy is superior to the alternative of litigating 184 individual suits. *General Tel. Co. v. Falcon*, 457 U.S. 147, 159 (1982) (class certification advances "the efficiency and economy of litigation which is a principal purpose of the procedure"); *Day v. NLO*, 851 F. Supp. 869, 883 (S.D. Ohio 1994) (of equal importance "are considerations of the avoidance of the inequality resulting from piecemeal litigation as well as a concern to provide access to the courts for litigants with limited resources and common claims").

### 2.     The Class Notices Satisfy Rule 23 and Due Process

Rule 23(e) requires the Court to "direct notice in a reasonable manner to all class members who would be bound" by the settlement. *Bailey v. White*, 320 Fed. Appx. 364, 2009 WL 928595 (6th Cir. 2009). The notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *UAW v. General Motors Corp.,* 497 F.3d 615, 626 (citing *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950)).

Reasonable notice to class members is required by due process as well. *Fidel v. Farley*, 534 F.3d 508 (6th Cir. 2008) (citing *DeJulius v. New England Health Care Employees Pension Fund,* 429 F.3d 935, 943-44 (10th Cir.2005) (citing *Mullane,* 339 U.S. at 313; *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 173 (1974). Due process "does not, however, require *actual* notice

to each party intended to be bound by the adjudication of a representative action." *Fidel v. Farley*, 534 F.3d 508 (6th Cir. 2008) (emphasis by the court) (citing *DeJulius,* 429 F.3d at 944 (citing *Mullane,* 339 U.S. at 313-14); *In re Integra Realty Res., Inc.,* 262 F.3d 1089, 1110-11 (10th Cir. 2001); *Silber v. Mabon,* 18 F.3d 1449, 1453-54 (9th Cir.1994))). The issue is not whether all class members received notice, "but whether the class as a whole had notice adequate to flush out whatever objections might reasonably be raised to the settlement." *Fidel*, 534 F.3d at 514 (quoting *Torrisi v. Tucson Elec. Power Co.,* 8 F.3d 1370, 1375 (9th Cir.1993)).

The "individual notice" requirement of Rule 23 and due process is fulfilled by sending written notice to class members by first-class mail at the addresses shown in the defendant's business records. *Grunin v. International House of Pancakes* (8th Cir. 1975), 513 F.2d 114, 120, *cert. denied* (1975), 423 U.S. 864 (1975) (citing *Eisen*, 417 U.S. at 172-77). The Eighth Circuit noted that, in *Eisen*, "the Supreme Court specifically held that individualized notice by mail to the last known address was the 'best notice practicable' in a class action." *Grunin*, 513 F.2d at 121.

In the present case, the proposed Class Notice satisfies these requirements. Under the terms of the Settlement Agreement and the proposed Preliminary Order, the Notices will be sent to the members of the class by first-class mail using the addresses shown in Defendant's records.

B.     **Approval of the Settlement Under Rule 23(e) Is Warranted**

Under Rule 23(e), a class settlement must be "fair, reasonable, and adequate" under a seven-factor standard discussed below. *UAW v. General Motors Corp.,* 497 F.3d 615, 626 (citing *Granada Invs., Inc. v. DWG Corp.,* 962 F.2d 1203, 1205 (6th Cir.1992); *Williams v. Vukovich,* 720 F.2d 909, 922-23 (6th Cir.1983)).

The Sixth Circuit has recognized that "the law generally favors and encourages the settlement of class actions." *Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981). Such actions, by their nature, involve uncertainties of outcome, difficulties of proof, and lengthy litigation, and lend themselves readily to compromise. 4 Newberg On Class Actions § 11.41 (4th ed. 2007) (citing cases). Therefore, when considering the below factors, the courts apply a "strong presumption" in favor of finding a settlement to be fair. *Dail v. George A. Arab, Inc.*, 391 F. Supp. 2d 1142, 1145-46 (M.D. Fla. 2005) (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)). *Accord, Sweet v. General Tire & Rubber Co.*, 1982 WL 278, *5 (N.D. Ohio Mar. 17, 1982).

### 1. The Seven-Factor Standard Is Satisfied

The Sixth Circuit uses seven factors to evaluate class action settlements:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*UAW v. General Motors Corp.,* 497 F.3d 615, 626 (6th Cir. 2007) (citing *Granada Invs., Inc. v. DWG Corp.,* 962 F.2d 1203, 1205 (6th Cir.1992); *Williams v. Vukovich,* 720 F.2d 909, 922-23 (6th Cir.1983)), *quoted in Crawford*, 2008 WL 4724499 at *3.

As shown below and in the Christy Declaration (*see* Exhibit 2), the seven-factor standard supports approval of the Settlement.

#### a) *No Indicia of Fraud or Collusion Exists*

The Parties' counsel each have extensive experience litigating FLSA claims, including claims for unpaid hours worked. A Settlement Agreement was achieved only after arms-length and good faith negotiations between the Parties. As such, there is no indicia of fraud or collusion.

8

### b) The Complexity, Expense and Likely Duration of Continued Litigation Favor Approval

The policy favoring the settlement of class actions and other complex cases applies with particular force here.  Employment cases in general, and wage-and-hour cases in particular, are expensive and time-consuming.  While the Parties agreed that the two-year statute of limitations applied under Ohio law, they disagreed whether the two-year limitations period for non-willful violations or three-year limitations period for willful violations applied under the FLSA. Defendant claims that even if Plaintiffs succeed on the merits, Plaintiffs cannot not prove a willful violation of the law, and thus, no wages would be owed for the 3rd year of the three-year limitations period.

If forced to litigate this case further, the Parties would certainly engage in complex, costly and protracted wrangling.  The Settlement, on the other hand, provides substantial relief to Representative Plaintiff and the Class Members promptly and efficiently, and amplifies the benefits of that relief through the economies of class resolution.

### c) Investigation Was Sufficient to Allow the Parties to Act Intelligently

The Parties engaged in substantial investigation prior to negotiating the Settlement Agreement.  Relevant information was exchanged including a complete analysis of each Class Member's overtime damages resulting from Defendant's practice and policy of failing to pay overtime compensation to Representative Plaintiff and its hourly employees at one and one-half times their "regular rate," and to include in the calculation of their regular rates "all remunerations for employment paid to, or on behalf of, the employee," such as the bonus payments.  In addition, Class Counsel obtained investigation notes from Representative Plaintiff and numerous other employees who are members of the proposed settlement class, and the legal

9

issues in the case were thoroughly researched by counsel for the Parties.  All of aspects of the dispute are well-understood by both sides.

### d) *The Risks of Litigation Favor Approval*

Counsel for both sides believe in the merits of their clients' positions, but nonetheless recognize that the litigation of claims is uncertain in terms of duration, cost, and result.  Moreover, in the present case, Defendant raises affirmative defenses to Plaintiffs' claims, and the outcome of those defenses is uncertain as well.  Continued litigation would be risky for all.

### e) *Uncertainty of Recovery Supports Approval*

Plaintiffs' range of possible recovery is also open to dispute.  Even if Plaintiffs succeed on the merits of their claims, the amount of recovery is uncertain and something upon which the Parties continue to disagree.

### f) *Experienced Counsel's Views Favor Approval*

The Parties' counsel are experienced in wage-and-hour class actions, have acted in good faith, and have represented their clients' best interests in reaching the Settlement Agreement.  Counsel support the Settlement Agreement as fair and reasonable, and in the best interest of the Class as a whole, as described in the Christy Declaration (*see* Exhibit 2).

## 2. **The Settlement Distributions Are Fair, Reasonable and Adequate**

As a part of the scrutiny it applies to an FLSA collective action settlement, "a court must ensure that the distribution of the settlement proceeds is equitable."  *Crawford v. Lexington-Fayette Urban County Government*, 2008 WL 4724499 (E.D. Ky. Oct. 23, 2008) (citing *Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 855 (1999).  In the present case, the Settlement Agreement provides that the Total Settlement Amount to be paid by Defendant will include:  (1) Individual Payments for which Class Members will be eligible; (2) a Service Award to Representative

Plaintiff; (3) separate Individual Payments to Opt-In Plaintiffs Daniel Anderson and Anthony LeVau, who are not Class Members; and (4) attorneys' fees, and litigation reimbursements to Class Counsel. All components of the proposed distribution are proper and reasonable, and the settlement as a whole is fair, reasonable and adequate for Representative Plaintiff and the Class Members, particularly in light of the fact that the Service Award, Individual Payments to Opt-In Plaintiffs, and the attorneys' fees and litigation reimbursements were negotiated outside of the Class Payment.

### a) *The Individual Payments Are Reasonable and Adequate*

All Individual Payments have been calculated proportionally on each Class Member's overtime damages resulting from Defendant's failure to include in the calculation of their regular rates "all remunerations for employment paid to, or on behalf of, the employee," such as the bonus payments, during the Calculation Period. The Calculation Period for Representative Plaintiff and the Class shall mean the period between February 18, 2018 and April 10, 2021.

If approved by the Court, the Proposed Settlement will provide substantial payments to Representative Plaintiff and the Class Members for unpaid overtime compensation. During the three-year limitations period provided under the FLSA, Representative Plaintiff and the Class Members were allegedly denied $10,040.22 in overtime compensation. The OMFWSA allows only for a two-year statute of limitations. The Parties have agreed to a resolution that will include a three-year recovery of Class Members under the Settlement.

As the Class Payment, Representative Plaintiff and the Class Members will receive $21,475.26. As such, the Proposed Settlement recovers more than 100% of the overtime compensation and more 100% of the liquidated damages that Representative Plaintiff and the Class Members were allegedly denied over the three-year limitations period. Additionally, there

11

were 77 Class Members who were owed less than $25. Under the terms of the Settlement, those Class Members will receive a minimum payment of $25.

The Individual Payments to Representative Plaintiff and the Class Members have already been calculated, and a Proposed Schedule of Individual Payments is being submitted to the Court for approval and is attached to the Parties Settlement Agreement.

Furthermore, as part of this Settlement, but as separate payments to settle their claims, Opt-In Plaintiffs Daniel Anderson and Anthony LeVau, who are not Class Members of the defined Class, will receive $1,500.00 each for signing a general release. (See Exhibit 3.)

### b) Representative Plaintiff's Service Award Is Proper and Reasonable

Service awards to a representative plaintiff recognizing the value of his or her services on behalf of other participants are proper. As stated in *In re Dunn & Bradstreet Credit Services Customer Litigation*, 130 F.R.D. 366 (S.D. Ohio 1990):

> Numerous courts have not hesitated to grant incentive awards to representative plaintiffs who have been able to effect substantial relief for classes they represent.

130 F.R.D. at 373 (citing *Wolfson v. Riley*, 94 F.R.D. 243 (N.D. Ohio 1981); *Bogosian v. Gulf Oil Corp.*, 621 F. Supp. 27, 32 (E.D. Pa. 1985); *In re Minolta Camera Products Antitrust Litigation*, 666 F. Supp. 750, 752 (D. Md. 1987)).

In this Circuit, service awards to representative plaintiffs are "typically justified when named plaintiffs expend more time and effort beyond that of other class members in assisting class counsel with litigation, such as by actively reviewing case and advising counsel in prosecution of case." *In re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 273, 276 (S.D. Ohio 1997).

The courts recognize that "differentiation among class representatives based upon the role each played may be proper in given circumstances." *Dun & Bradstreet*, 130 F.R.D. at 374 (citing *In re Jackson Lockdown/MCO Cases*, 107 F.R.D. 703, 710 (E.D. Mich. 1985)). *See also Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 250 (S.D. Ohio 1991) (among the factors warranting incentive awards are the "time and effort spent" by the individuals in question and "whether these actions resulted in a substantial benefit to Class Members").

In the present case, the Christy Declaration (*see* Exhibit 2) establishes that the proposed Service Award is proper and reasonable. Representative Plaintiff Ilyana Rosario's services were extensive and effective. In addition to discovering Defendant's failure to include in the calculation of her and Class Member's regular rates "all remunerations for employment paid to, or on behalf of, the employee," such as the bonus payment and reporting it to Class Counsel, she provided extensive factual information to Class Counsel and faithfully engaged in calls and other communications with Class Counsel. Moreover, she subjected herself to the responsibilities of serving as a named plaintiff in a lawsuit against his former employer. Further, she is providing a general release of all claims as part of the payment. Representative Plaintiff's service award is being made as a separate payment outside of the Class Payment.

        c)       ***The Attorneys Fees and Expenses to Class Counsel Are Proper and Reasonable***

The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. § 216(b). The OMFWSA, which is interpreted in accordance with the

FLSA,[1] also provides that the defendant is liable for "costs and reasonable attorney's fees." O.R.C. § 4111.10.

In *Fegley v. Higgins,* 19 F.3d 1126, 1134 (6th Cir. 1994), *cert. denied,* 513 U.S. 875 (1994), the Sixth Circuit held that the FLSA's mandatory attorneys' fee provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights." *Fegley,* 19 F.3d at 1134 (quoting *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G & M Roofing and Sheet Metal Co.,* 732 F.2d 495, 502 (6th Cir.1984)).

*Fegley* was followed in *Bessey v. Packerland Plainwell, Inc.* 2007 WL 3173972 (W.D. Mich. 2007). In determining the reasonableness of a fee award, the *Bessey* court considered the comparative data about Rule 23 class settlements summarized in *Shaw v. Toshiba America Information Systems, Inc.*, 91 F. Supp. 2d 942 (E.D. Tex. 2000). The NERA Study relied upon in *Shaw* and *Bessey* showed the average result achieved for class members was only 7% to 11% of claimed damages. Measured against that standard, the settlement in the present case is exemplary. The Individual Payments represent more than 100% of the overtime compensation and more than 100% liquidated damages Representative Plaintiff and the Class Members were allegedly denied over the three-year limitations period. As such, Counsel has obtained more for Class Members than they would have been entitled to if this matter had proceeded to trial.

As recent as July 1, 2021, the Sixth Circuit ruled that the payment of fees and costs based on the fees and costs expended in a case, rather than simply using the percentage of recovery method, is acceptable. *See Smyers, et al., v. Ohio Mulch Supply Inc., et al.*, Nos. 21-3008/09 (6th

---

[1] *See Douglas v. Argo-Tech Corp.*, 113 F.3d 67, at fn 2 (6th Cir. 1997); *Mitchell v. Abercrombie & Fitch, Co.*, 428 F. Supp. 2d 725, 732 (S.D. Ohio 2006).

Cir. July 1, 2021)(reversing district court decision reducing fee and cost award and awarding $57,114.25 in fees and costs with payment to plaintiffs in amount of $37,885.75 where the settlement obtained resulted in 125% of the total amount of damages plaintiffs would have been entitled had they proceeded to trial).

In the instant matter, Representative Plaintiff and Class Members are receiving more they could receive even if this case were to proceed to trial and result in a full victory.  The attorneys' fees and costs were negotiated separately from the Class Payment, are reasonable in light of the exceptional benefit achieved for Plaintiff and the Class, and are awarded as a separate amount outside of the Class Payment.  The attorneys' fees and costs are $52,937.77.

Had this case not settled, Class Counsel would have vigorously litigated the case without any promise of success and compensation.  At every step of the litigation, Defendant could have succeeded.  Therefore, the Class Members were at great risk for non-payment.  This risk of non-payment strongly supports the amount requested here and warrants notice to the class of Plaintiffs' attorneys' fee request.

On the basis of these factors, as well as all of the other factors discussed above, the Court should conclude that the Settlement is fair, reasonable, and adequate, and grant preliminary and later final approval under Rule 23(e).

**IV.     CONCLUSION**

Representative Plaintiff and Defendant request that the Court grant preliminary approval of the Settlement, designate Representative Plaintiff as Class Representative, preliminarily approve Class Representative's request for a Service Award, designate Plaintiffs' Counsel as Class Counsel, preliminarily approve Class Counsel's request for attorneys' fees and costs, and

direct distribution of notice to the Class by entering the proposed Preliminary Order attached hereto as Exhibit 5.

Respectfully submitted,

| | |
|---|---|
| /s/ Chastity L. Christy | /s/John Gerak |
| Chastity L. Christy (0076977) | John Gerak |
| Anthony J. Lazzaro (0077962) | Andrew S. Haring |
| Lori M. Griffin (0085241) | Ogletree, Deakins, Nash, Smoak & Stewart, P.C. |
| The Lazzaro Law Firm, LLC | Key Tower |
| The Heritage Building, Suite 250 | 127 Public Square, Suite 4100 |
| 34555 Chagrin Boulevard | Cleveland, Ohio 44114 |
| Moreland Hills, Ohio 44022 | Phone: 216-274-6917 |
| Phone: 216-696-5000 | john.gerak@ogletree.com |
| Facsimile: 216-696-7005 | andrew.haring@ogletree.com |
| anthony@lazzarolawfirm.com | |
| chastity@lazzarolawfirm.com | *Attorneys for Defendant* |
| lori@lazzarolawfirm.com | |

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on July 9, 2021, a copy of the foregoing *Joint Motion For Preliminary Approval Of Class Action Settlement Agreement* was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

                                                /s/ Chastity L. Christy
                                                Attorney for Plaintiff